UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 13-151-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 15-7414-DCR |
| | ) | |
| TONY LORENZO GINTER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Tony Ginter plead guilty to being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). [Record No. 63] He was sentenced to a term of imprisonment of 159 months, followed by five years of supervised release. [Record No. 95] Ginter waived his right to collaterally attack his plea, conviction, and sentence, except for claims of ineffective assistance of counsel. [Record No. 93, p. 4]

Thereafter, Ginter filed a motion to vacate his sentence under 28 U.S.C. § 2255 claiming that, according to *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), his sentence under the Armed Career Criminal Act ("ACCA") is unconstitutional. [Record No. 97] While Ginter did not allege ineffective assistance of counsel in his motion or in his reply, he submitted a supplemental filing that predicated ineffective assistance on his counsel's alleged failure to advise him regarding the ACCA's application to his prior conviction of robbery under Ohio law. [Record No. 108, p. 3] Because the United States did

- 1 -

not invoke Ginter's waiver of collateral relief, the Court has analyzed the merits of the motion to vacate.[1]

Consistent with local practice, Ginter's motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the government's response [Record No. 103] and Ginter's reply brief [Record No. 107], United States Magistrate Judge Robert E. Wier issued a report, recommending that Ginter's motion for habeas relief be denied and that no Certificate of Appealability be issued. [Record No. 113] Ginter filed objections to the magistrate judge's recommended disposition. [Record No. 114] The undersigned has conducted a *de novo* review of the portions of the report to which Ginter objects. Based on the Court's full review, the magistrate judge's recommendations will be adopted and Ginter's motion will be denied.

I.

In seeking relief under 28 U.S.C. § 2255(a), a defendant may assert that: the sentence was imposed in violation of the United States Constitution or federal law; the court lacked jurisdiction; his or her sentence exceeded the maximum penalty authorized by law; or the sentence is otherwise subject to collateral attack. To prevail on a claim of constitutional

---

[1] Ginter also requests that the Court appoint counsel. [Record No. 107, p. 1] The Court may appoint counsel under § 2255 proceedings. 28 U.S.C. § 2255(g). Additionally, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B). However, "[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court . . . " *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). Here, the record and the parties' arguments are adequate for determining the issues presented. Thus, appointment of counsel would be unnecessary and a waste of resources. Accordingly, Ginter's request for appointment of counsel will be denied.

error, a defendant must establish an error of magnitude that had a substantial and injurious effect or impact on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Conversely, to prevail on a claim of non-constitutional error, the defendant must show a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id*. (quoting *United States v. Ferguson*, 918 F. 2d 627, 630 (6th Cir. 1990)) (internal quotation marks omitted).

A district court must make a *de novo* determination of those portions of a magistrate judge's recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## II.

Ginter claims that, following the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), he no longer qualifies a sentencing enhancement under the ACCA. [Record No. 97, p. 1] Under the act, a person who violates 18 U.S.C. § 922(g)(1) and has three previous convictions for a violent felony or a serious drug offense is subject to a fifteen-year mandatory minimum sentence.[2] 18 U.S.C. § 924(e). A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[2] Ginter was not sentenced to the mandatory-minimum term of imprisonment due to a Government motion for departure under section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G."). [Record No. 99, p. 4]

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion of the statute is known as the "residual clause." In *Johnson*, the Supreme Court held that the residual clause is unconstitutionally vague. 135 S. Ct. at 2557. However, the other clauses remain intact. *Id.* at 2563.

Here, the defendant had at least three prior convictions qualifying him for the sentencing enhancement in the ACCA. He contends that two of the convictions[3]—one for third degree burglary in Kentucky in 1983,[4] and one for robbery in Ohio in 1984[5]—were considered violent felonies only under the residual clause. [Record No. 97, pp. 9, 12–13] However, because the record demonstrates that the two convictions in question qualified as violent felonies under ACCA clauses that remain intact, Ginter is not actually making a valid *Johnson* claim. As a result, he cannot establish an error of constitutional magnitude that had a substantial and injurious effect on the proceedings. *See Watson*, 165 F.3d at 488.

---

[3] Ginter's prior convictions include burglary in Kentucky in 1983, robbery in Ohio in 1984, robbery in Kentucky in 1988, possession with intent to distribute marijuana in Texas in 1992, and marijuana trafficking in Kentucky in 2001. [Record Nos. 60, pp. 1–2; 105, pp. 1–3] The parties agree that the Kentucky burglary and Ohio robbery convictions were used in determining Ginter's status under the ACCA. [*See* Record No. 113, p. 15 n.17.] While Ginter once claims that the "[r]obberies are no longer [ACCA] qualifiers," he never specifically addresses the 1988 Kentucky robbery. [Record No. 97, p. 2]

[4] [Record No. 105]

[5] [Record No. 105-1, pp. 2–4] Ginter characterizes this conviction as "attempted robbery" due to language in the Presentence Investigation Report ("PSR") [Record No. 112, ¶ 34], but the record demonstrates that it was robbery. [Record No. 105-1, pp. 3–4]

- 4 -

Likewise, Ginter cannot demonstrate a fundamental defect resulting in a miscarriage of justice or a due process violation. *Id.*

### A. Kentucky Third Degree Burglary in 1983

Under 18 U.S.C. § 924(e)(2)(B)(ii), Kentucky third degree burglary qualifies as an ACCA predicate if its "statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Taylor v. United States*, 495 U.S. 575, 602 (1990). The first approach is characterized as the "categorical approach," *id.* at 576, whereas the second is characterized as the "modified categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The latter approach only applies where a statute is "divisible." *Id.* In Ginter's case, the Kentucky burglary statute must describe some crimes that correspond to "generic burglary," and some that do not, to be divisible.[6] *See United States v. Brumback*, 614 F. App'x 288, 292 (6th Cir. 2015) (citing *Descamps*, 133 S. Ct. at 2281).

Under the modified categorical approach, the Court may review "terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or []

---

[6] Contrary to Ginter's assertion, *Descamps* did not eliminate the modified categorical approach because it addressed an indivisible statute. 133 S. Ct. at 2289–90; s*ee United States v. Mitchell*, 743 F.3d 1054, 1063–66 (6th Cir. 2014). [Record No. 97, p. 5] Further, while *Brumback* is not binding because it is an unpublished opinion, its reasoning is highly persuasive. *See United States v. Stafford*, 721 F.3d 380, 397 (6th Cir. 2013). Lastly, Ginter's Sixth Amendment argument has already been addressed by the Supreme Court. *See, e.g.*, *Shepard*, 544 U.S. at 25 (plurality opinion as to this part). [Record No. 97, p. 8] The Court has adequately addressed Sixth Amendment concerns by analyzing whether Ginter's prior burglary conviction "necessarily" involved facts equating to generic burglary. *See id.* at 24–25.

some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005) (prohibiting use of police reports to determine whether defendant's Massachusetts burglary conviction qualified as generic burglary under the ACCA). Ultimately, the Court must determine the version of the crime to which the defendant pleaded guilty. *See Shepard*, 544 U.S. at 21 (discussing whether "the plea had 'necessarily' rested on the fact identifying the burglary as generic") (quoting *Taylor*, 495 U.S. at 602).

Generic burglary's basic elements consist of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. The terms "building" and "structure" have their ordinary meanings. *See id.* Under the version of the Kentucky statute of which Ginter was convicted, "[a] person [wa]s guilty of burglary in the third degree when, with the intent to commit a crime, he knowingly enter[ed] or remain[ed] unlawfully in a building." Ky. Rev. Stat. § 511.040(1) (effective July 15, 1980). A building included "any structure, vehicle, watercraft or aircraft: (a) [w]here any person lives; or (b) [w]here people assemble for purposes of business, government, education, religion, entertainment or public transportation." Ky. Rev. Stat. § 511.010(1) (effective July 15, 1980).

Under the categorical approach, Kentucky third degree burglary does not qualify as generic burglary under the ACCA because of its expansive definition of the term "building." *Brumback*, 614 F. App'x at 292. And because the Kentucky statute describes burglary of

ordinary buildings and other, non-ACCA qualifying structures, it is divisible.[7]  *Id.*  Thus, it can be analyzed under the modified categorical approach.  *Id.*

The magistrate judge properly looked to the Kentucky indictment and the defendant's factual basis, as reflected in the state court's final judgment, in determining that Ginter's third degree burglary conviction constituted "generic burglary" under the ACCA.  *See Shepard*, 544 U.S. at 26.  [*See* Record No. 113, pp. 11−12.]  For example, the indictment charged Ginter with "unlawfully entering a building owned by Wayne West with the intent to commit a crime[.]"  [Record No. 105, p. 1]  Because the term "building" in the indictment is ambiguous, the magistrate judge turned to the state court final judgment, which stated that:

> the Court having given due consideration to the written report of the pre-sentence investigation prepared by the Division of Probation and Parole . . . and the Court having advised the defendant and his counsel of the factual contents and conclusions of said written pre-sentence report and afforded defendant an opportunity and a reasonable time in which said matters could be controverted if he desired, and no such opportunity having been sought, and there being no legal cause to the contrary, [i]t is hereby ORDERED . . . .

[*Id.*, p. 2]  The pre-sentence report contained Ginter's version of the events surrounding the burglary.  He claimed that he "went into a house on Clintonville Road, it was Wayne West's house.  I took tools and a lot of stuff and loaded it in a truck I borrowed.  I turned myself in 3

---

[7] The Court granted Ginter's motion to supplement the record with his argument that *United States v. Mathis* cautions against finding the Kentucky burglary statute divisible.  786 F.3d 1068 (8th Cir. 2015), *cert. granted*, 2016 WL 207258 (Jan. 19, 2016).  [Record Nos. 115; 116]  In *Mathis*, the defendant asserts that the modified categorical approach should not be used where the district court must look to a separate "definitions" section of the state statute to determine the list of items that fall within the meaning of "building" or "structure."  *See* Petition for Writ of Certiorari at *7, (No. 15-6092), 2015 WL 9855125.  He reasons that the definitional provisions merely establish the "means" of satisfying the statute's elements, rather than the alternative elements of the offense.  *Id.* at *1.  The Sixth Circuit has taken the view that this distinction is without legal significance.  *See United States v. Prater*, 766 F.3d 501, 510 (6th Cir. 2014).  Further, *Descamps* is more consistent with the Sixth Circuit's approach.  133 S. Ct. at 2285 n.2.

or 4 days later." [8] [*Id.*, p. 5] The pre-sentence report also included other references to the fact that the burglary occurred at a house owned by Wayne West. [*Id.*, p. 4]

In his objections, Ginter argues that the magistrate judge was not permitted to review pre-sentence report material in making his determination. [Record No. 114, pp. 2–3] First, the defendant cites *Descamps*, 133 S. Ct. at 2286, to support his position. [*Id.*, p. 2] However, *Descamps* did not involve a divisible statute and was not employing the modified categorical approach. *Id.* at 2285. Therefore, the fact that the defendant's admissions were "irrelevant" under the categorical approach in *Descamps* has nothing to do with Ginter's admissions in the present case. *Id.* at 2286. To the extent that Ginter claims that the Kentucky burglary statute is indivisible because it is overbroad [*see* Record No. 97, p. 6], *Descamps* clearly demonstrated that "overbreadth" regarding the definition of a "building" in a burglary statute renders that statute divisible. *Id.* at 2281.

Next, Ginter argues that *United States v. Wynn*, 579 F.3d 567 (6th Cir. 2009), and similar cases hold that pre-sentence reports are not *Shepard* material. [Record No. 114, pp. 7–8] In *Wynn*, the court held that factual recitations in a federal presentence investigation report ("PSR") were not *Shepard* material, even if the defendant did not object to the recitations. *Id.* at 576–77 (citing *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008) (dealing with federal PSR)). Specifically, the court reasoned that, "a PSR prepared for a federal district-court sentencing can never be a record of a convicting state court." *Id.* at 577; *United States v. Ferguson*, 681 F.3d 826, 832 (6th Cir. 2012) (dealing with federal PSR). In

---

[8] At sentencing, this Court noted the fact that the defendant's factual basis was incorporated into the state court final judgment. [Record No. 100, p. 13]

other words, the state court's judgment in *Bartee*, *Wynn*, and *Ferguson* did not "necessarily" rest on the facts contained in the subsequently-created federal PSR. *See Shepard*, 544 U.S. at 21; *see also United States v. Anglin*, 601 F.3d 523, 529 (6th Cir. 2010).

In *United States v. Gardner*, the court found the reasoning in *Wynn* applicable to state PSRs, as well. 649 F.3d 437, 445 (6th Cir. 2011). However, the court in that case did not categorically exclude all statements contained in PSRs. Instead, the court stated that, "for the VA PSR to be considered under *Shepard*, it must be an 'explicit factual finding by the trial judge to which the defendant assented.'" *Id.* (quoting *Shepard*, 544 U.S. at 16). The problem in *Gardner* was that "there were too many apparent contradictions and inconsistencies between the Virginia PSR and the judicial order to establish that the documents submitted were ones to which Gardner assented." *Id.* at 446. Additionally, the state judicial order allegedly incorporating the PSR at issue also included references to "additional facts" presented by the defendant at a hearing subsequent to the drafting of the PSR. *Id.* Thus, the district court could not determine whether the facts contained in the state PSR were actually admitted by the defendant as part of his guilty plea.

The present action is distinguishable from *Gardner*. In *Gardner*, there was uncertainty regarding whether the PSR at issue was, in fact, the PSR referenced in the judicial order. *Id.* at 445. Here, Ginter has made no allegation that the state court final judgment referenced a different pre-sentence report. Further, in *Gardner*, the "validity" of the PSR was "questionable" because it was inconsistent with the judicial order, *id.* at 446,[9]

---

[9] For example, the Virginia PSR stated that Gardner was charged with "Aggravated Sexual Battery" and convicted of "Indecent Liberties with a Child," but the judicial order referred only to "sexual battery." *Id.* at 446. This inconsistency went to the key issue of the case—whether

but in Ginter's case, the validity of the PSR is not at issue. In addition, the state court judgment in Ginter's case does not mention "additional facts" not contained in the pre-sentence report. *Compare with id.* at 439. Consequently, the statements contained in Ginter's pre-sentence report fall within the exception outlined in *Gardner* regarding a defendant's admission accepted by the trial court. *Id.* at 445.

Moreover, Ginter's circumstances are more appropriately considered under the reasoning of *United States v. Kappell*, 418 F.3d 550, 559–560 (6th Cir. 2005). In *Kappell*, the court held that the factual basis contained in a state criminal complaint constituted *Shepard* material because it was accepted by the defendant in the transcript of the plea proceedings. *Id.* at 560; *see also United States v. Amos*, 496 F. App'x 517, 522–23 (6th Cir. 2012) (probable cause affidavit constituted *Shepard* material where defendant stipulated to it at his state sentencing). The ultimate question is whether the state court's judgment "necessarily" rested on the fact identifying the offense as generic. *Taylor*, 495 U.S. at 602. Here, the state trial court needed the defendant's statement and the facts in the pre-sentence report to determine whether Ginter had burglarized something that qualified as a "building" or "structure" under the Kentucky statute. Even though the terms in the statute extended beyond the words' ordinary meanings, the statute was not without limit. *See* Ky. Rev. Stat. § 511.010(1) (effective July 15, 1980). Therefore, the state court final judgment necessarily

---

the defendant had previously possessed *child* pornography under 18 U.S.C. § 2252A(b)(1). *Id.* at 442.

rested on the determination that Ginter took tools from "Wayne West's house."[10]  [Record No. 105, p. 5]

While an entire pre-sentence report is generally not considered *Shepard* material, statements included in the report that have been admitted by the defendant and incorporated into the final judgment are validly considered under *Shepard*, 544 U.S. at 26.  *See United States v. Calloway*, 189 F. App'x 486, 490 (6th Cir. 2006).  Here, the state court advised Ginter that it was relying on the factual basis and the defendant's statements contained in the pre-sentence report in accepting Ginter's plea, providing him with an opportunity to object. [Record No. 105, p. 2]  Ginter accepted the pre-sentence report's factual basis.  In summary, the magistrate judge properly considered certain facts and statements, reflected in the state pre-sentence report and incorporated into the final judgment, in determining that Ginter's prior conviction for third degree burglary qualifies as an enumerated offense in 18 U.S.C. § 924(e)(2)(B)(ii).[11]  [Record No. 113, p. 15]

### B.      Ohio Robbery in 1984

Ginter's Ohio robbery conviction qualifies as a violent felony under the ACCA if it "has as an element the use, attempted use, or threatened use of physical force against the

---

[10]     The fact that the state court needed to determine the character of the property burglarized by Ginter addresses his concern, presented in Justice Thomas' words, that certain ACCA-important facts may go uncontested at the trial court level because they do not affect the sentence at that level.  [Record No. 114, p. 8]

[11]     Ginter cites *United States v. Hubbard* as support for his theory that his Kentucky burglary conviction falls under the residual clause.  162 F.3d 1157 (Table), 1998 WL 558737 (4th Cir. 1998). [Record No. 114, p. 9]  However, the court in *Hubbard* merely remanded the case to the district court to determine whether the petitioner's motion was timely.  *Id.* at *2.  In any event, *Hubbard* is not binding on this Court.  *See Moldowan v. City of Warren*, 578 F.3d 351, 381 n.9 (6th Cir. 2009).

person of another." 18 U.S.C. § 924(e)(2)(B)(i). The meaning of "physical force" is a question of federal law. *Johnson v. United States*, 559 U.S. 133, 138 (2010). While the definition in the state statute at issue need not mirror the federal definition of physical force, it must encompass "force capable of causing physical pain or injury to another person." *Id.* at 140. Such force should be "strong enough to constitute power." *Id.* at 142 (internal quotation marks and citation omitted).

In 1983, the Ohio robbery statute provided that, "[n]o person, in attempting or committing a theft offense . . . or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."[12] Ohio Rev. Code § 2911.02(A) (effective Jan. 1, 1974). This language closely tracks the language in 18 U.S.C. § 924(e)(2)(B)(i). Additionally, Ohio defined "force" as "violence, compulsion, or constraint *physically* exerted by any means upon or against a person or thing." Ohio Rev. Code § 2901.01(A)(1) (effective July 21, 1982) (emphasis added). Consequently, Ginter was convicted of an offense that had as an element the use or threatened use of physical violence, compulsion, or constraint, all of which address force "strong enough to constitute power." *Johnson*, 559 U.S. at 142. Moreover, physical violence, compulsion, and constraint address "force capable of causing physical pain or injury" to another. *Id.* at 140.

While Ohio's definition of the term "force" included violence exerted upon a "thing," Ohio's robbery definition narrowed the use of physical force to a person. Ohio Rev. Code §

---

[12] This language remains largely unchanged, but it has been codified differently. *See* Ohio Rev. Code § 2911.02(A)(3) (effective July 1, 1996). Ginter asserts that the magistrate judge read this provision "in a vacuum." [Record No. 114, p. 4] It is not clear what Ginter intended by this statement, but the magistrate judge thoroughly examined the case law involving Ohio Rev. Code § 2911.02(A) and § 2911.02(A)(3) and addressed the arguments raised by Ginter.

2911.02(A). As a result, the magistrate judge properly concluded that Ginter's prior conviction for robbery in 1984 qualified as a violent felony under the "use of force" clause in 18 U.S.C. § 924(e)(2)(B)(i). *See United States v. McMurray*, 653 F.3d 367, 374 n.6 (6th Cir. 2011) (citing *United States v. Mansur*, 375 F. App'x 458, 464 (6th Cir. 2010) (holding that attempted robbery in Ohio qualified under the ACCA's "use of force" clause)); *United States v. Logan*, 16 F.3d 1222 (Table), at *1, 1994 WL 49587 (6th Cir. 1994). [Record No. 113, p. 19]

Ginter contends that the magistrate judge should not have relied on *Mansur* because it is unpublished and "failed to consider what the Ohio courts had to say." [Record No. 114, p. 5] He relies primarily on the analysis in *United States v. Litzy* to support his position. Criminal Action No. 3:15-00021, 2015 WL 5895199, *11 (S.D. W. Va. Oct. 8, 2015) (holding that present-day Ohio robbery does not qualify as a crime of violence under U.S.S.G. § 4B1.1). The magistrate judge properly noted that *Litzy*, as an unpublished district court opinion from another circuit, is not binding upon this Court. *See United States v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007). [Record No. 113, pp. 20–21]

Additionally, the magistrate judge adequately addressed and refuted the reasoning in *Litzy*. [*Id.*, pp. 21–24] First, *Litzy* describes the Ohio robbery statute as overbroad because the definition of "force" applies to both people and things. 2015 WL 5895199, at *5. However, *Litzy* fails to note that the Ohio robbery statute is expressly limited to "another." Ohio Rev. Code § 2911.02(A)(3). Second, *Litzy* cites Ohio cases such as *State v. Davis*, 451 N.E.2d 772 (Ohio 1983), and *State v. Carter*, 504 N.E.2d 469 (Ohio Ct. App. 1985), to demonstrate that Ohio's "force" definition is broader than *Johnson*'s ACCA "force." *Litzy*,

2015 WL 5895199, at *5. *Davis* involved a defendant who threatened the victim by simulating that he was carrying a firearm. 451 N.E.2d at 775. *Carter* involved an assailant who ran towards an 85-year-old woman, grabbed and moved her hand, and snatched her billfold from her. 504 N.E.2d at 470–71.

Both *Davis* and *Carter* involved the *threat* of physical injury to the victim. In *Carter*, the court noted that "the potential for serious physical injury was certainly present . . . . A fall at that age often results in a broken hip or other broken bones." 504 N.E.2d at 470. The court further reasoned that the defendant's "behavior and demeanor certainly suggested he was willing to use whatever force was necessary to accomplish his goal." *Id.* at 472. As a result, *Carter* is consistent with the "threat" portion of 18 U.S.C. § 924(e)(2)(B)(i). In addition, *Davis* does not aid Ginter's argument because the court in that case concluded that the defendant's actions may not have "threatened the immediate use of force," but may have instead described a lesser included offense. 451 N.E.2d at 776. Because the trial court in *Davis* failed to instruct the jury on the lesser offense, the Supreme Court of Ohio remanded the case to the trial court. *Id.* Consequently, Ginter cannot claim that *Davis* definitively expounds the Ohio robbery statute.

Because *Litzy* neglects the "threat" portion of 18 U.S.C. § 924(e)(2)(B)(i), its reasoning regarding *Davis* and *Carter* is not persuasive. Moreover, its references to other Ohio cases are not persuasive for the same reasons. *See, e.g.*, *State v. Bush*, 694 N.E.2d 984, 986 (Ohio Ct. App. 1997) (requiring that the threat of force "be of a type that exacts or potentially exacts harm to a person"). Therefore, even after considering the arguments in *Litzy*, this Court concludes that Ginter's Ohio robbery conviction qualifies as an ACCA

predicate under the "use of force" clause. This Court would come to same conclusion, even if *Mansur*, 375 F. App'x at 464, failed to adequately address Ohio case law, as argued by Ginter.[13] [Record No. 114, p. 5] As a result, the Supreme Court's holding in *Johnson* regarding the residual clause does not affect whether Ginter's 1984 robbery conviction qualifies as an ACCA predicate offense.[14]

### C. Evidentiary Hearing

An evidentiary hearing is not required where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, a petitioner presenting a legal, rather than a factual, dispute is not entitled to an evidentiary hearing. *See Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). Here, Ginter presents a legal dispute, and the record provides all the information needed to resolve that dispute. Therefore, he is not entitled to an evidentiary hearing. *See id.* at 333.

### III.

The magistrate judge recommended that the Court deny issuance of a Certificate of Appealability. [Record No. 113, p. 26] A Certificate of Appealability may issue "'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Miller-*

---

[13] Ginter further cites *United States v. Bilal*, 610 F. App'x 569 (6th Cir. 2015), to support his position regarding the Ohio robbery. [Record No. 97, p. 4] However, *Bilal* dealt with attempted aggravated robbery, so it is not relevant here. *Id.* at 569.

[14] Because Ginter conceded that the Ohio robbery conviction qualified as a violent felony under the ACCA at sentencing, the Court did not specifically address under which clause of the ACCA his conviction qualified. [Record No. 93, p. 2; 110, pp. 18, 34–35] Also, to the extent Ginter claims ineffective assistance of counsel for his attorney's failure to "argue the applicability of the Ohio robbery at issue here," the Court agrees with the magistrate judge that Ginter's counsel was not ineffective for failing to raise a "meritless argument[]." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999). [Record No. 113, p. 24 n.24]

*El v. Cockrell*, 537 U.S. 322, 330 (2003) (quoting 28 U.S.C. § 2253(c)(2)). When the denial of a § 2255 motion is based on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the present action, reasonable jurists would not debate the denial of Ginter's § 2255 motion on the grounds that his prior convictions constitute valid ACCA predicates under the enumerated and "use of force" clauses. As a result, Ginter's claims do not involve *Johnson*'s due process concerns. Thus, he has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 484. Therefore, a Certificate of Appealability will not issue.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 113] is **ADOPTED** in full and **INCORPORATED** here by reference.

2. Defendant Tony Ginter's objections [Record No. 114] to the Report and Recommendation are **OVERRULED**.

3. Defendant Ginter's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 97] is **DENIED**.

4. The defendant's request for appointment of counsel for his § 2255 motion is **DENIED**.

5. A Certificate of Appealability shall not issue with respect to any matter or claim raised in this proceeding.

6. A judgment in favor of the United States shall issue this date.

This 28th day of January, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge